UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                          :

**ANDREW DELANEY**,
                          :

                Appellant,    :     **MEMORANDUM DECISION AND ORDER**

                          :

       – against –         :    22-CV-1664 (AMD)

                          :

**GREGORY MESSER**, as trustee, **SULLIVAN & CROMWELL LLP**, and **UNITED STATES TRUSTEE**,
                          :

                Appellees.    :

                          :
--------------------------------------------------------- X

                          :

**ANDREW DELANEY**,
                          :

                Appellant,    :   22-CV-2432 (AMD)

                          :   22-CV-4805 (AMD)

       – against –         :   22-CV-4806 (AMD)

                          :

**GREGORY MESSER**, as trustee,
                          :

                Appellee.    :
--------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

    Before the Court are the debtor's consolidated appeals from the bankruptcy court's orders approving two settlements negotiated by the trustee, limiting the debtor's exemption under 11 U.S.C. § 522(d)(5) and declining to dismiss the debtor's bankruptcy petition. For the reasons that follow, the bankruptcy court's orders are affirmed.

## BACKGROUND

    On December 23, 2020, the debtor filed a *pro se* petition in the Bankruptcy Court for the Eastern District of New York to discharge indebtedness under Chapter 7, Title 11 of the United

States Bankruptcy Code.  In his petition, the debtor listed $1,110 in assets and $44,434 in liabilities for credit card debt.  (22-CV-2432, ECF No. 10-2 at 100.)  The schedule attached to the petition included a direction to list any "claims against third parties, whether or not [the debtor has] filed a lawsuit or made a demand for payment," under the penalty of perjury.  (22-CV-4805, ECF No. 7-2 at 25.)  The debtor checked "No" and listed "$0."  (*Id*.)  Similarly, at the § 341 meeting, the debtor was asked whether he had a claim against any person or business, was suing anyone for any reason or had any claims upon which he could bring a lawsuit.  (22-CV-4806, ECF No. 6-3 at 4–5.)  The debtor answered "No" to each question.  (*Id*.)

However, the trustee discovered that the debtor was involved in several pending litigations.  (22-CV-2432, ECF No. 10-2 at 355.)  The debtor responded that he did not "understand why [he] ha[d] to list them because they have no judgment against [him] for anything," and because he filed "a motion to dismiss" those claims.  (22-CV-4805, ECF No. 7-2 at 569–70.)  Nevertheless, he amended the schedules in March 2021.  He listed two pending lawsuits, without describing the claims involved, and valued them at $0.  (22-CV-4806, ECF No. 6-2 at 70.)  After the trustee advised the bankruptcy court that there were still other pending lawsuits, the debtor filed a second amended schedule in April 2021.  (*Id.* at 85–86.)  This time, he listed seven lawsuits, two of which are relevant here:

> Delaney v. Sullivan & Cromwell LLP, Index No. 657556/2019 (N.Y. Sup. Ct. filed December 31, 2019) Case is for $13,000,000 for breach of contract, tort, and other claims regarding arbitration agreement.  Has faced motion to dismiss for 14 months and has big problems of statute of limitations and standing.  Attorney representing Debtor: Christopher Beres, who tried to get any settlement but S&C claims it is valueless.

and

> HC2, Inc. v. Delaney, 1:20-cv-03178 (S.D.N.Y. filed April 22, 2020) (Liman, J.)  All of Debtor's counterclaims were dismissed including NYLL 740 on December 18, 2020.  On January 13, 2021, due to 30 day deadline, the Debtor filed a notice of appeal.  The case faces a motion to dismiss which is stayed.

(*Id.*)  The debtor again valued his claims at $0.  (*Id.*)  He filed another amended schedule in November 2021, in which he provided essentially the same description of the Sullivan & Cromwell lawsuit, but changed the value to "Disputed."  (*Id.* at 213.)

The trustee successfully negotiated settlements in both of those lawsuits.  First, HC2 agreed to pay the estate $25,000, even though, as the debtor himself admitted, the Southern District of New York had already dismissed his counterclaims.  (22-CV-2432, ECF No. 10-2 at 356.)  The settlement provided that "HC2's agreement to pay the Settlement Sum is in no way a reflection or acknowledgement . . . of any liability or indebtedness owed to Delaney," but an effort to avoid further litigation costs.  (*Id.* at 9.)  HC2 also agreed to withdraw its claims against the debtor, but only as part of the settlement with the trustee: if the bankruptcy case was dismissed, the settlement and the withdrawal would be void.  (22-CV-4805, ECF No. 7-3 at 37.)  Second, Sullivan & Cromwell agreed to pay the estate $12,500.  (22-CV-1664, ECF No. 9-2 at 135.)  Sullivan & Cromwell likewise agreed to withdraw its claims as part of the settlement.  (*Id.* at 135–37.)

The debtor objected to both settlements.  He argued that the trustee did not properly investigate the merits of his claims, and settled the lawsuits for amounts that were below the lowest point of reasonableness.  He also claimed that HC2 brought a fraudulent lawsuit against him and then used the bankruptcy proceedings to force a settlement.  The bankruptcy court approved both settlements after extensive briefing and hearings, reasoning that the settlement amounts were much higher than the value the debtor himself placed on his claims—$0.  The debtor appealed the bankruptcy court's approval of the Sullivan & Cromwell settlement in 22-CV-1664.  Instead of appealing the approval of the HC2 settlement, however, the debtor moved for reconsideration in the bankruptcy court.  The bankruptcy court conducted another hearing but

3

found that the debtor did not identify any mistake or intervening case law warranting reconsideration.  The debtor appealed the reconsideration order in 22-CV-4806; he never appealed the underlying order approving the HC2 settlement.

While those appeals were pending, the debtor asked the bankruptcy court to exempt the $25,000 HC2 settlement from the bankruptcy estate under 11 U.S.C. § 522(d)(5).  After some initial back-and-forth, the trustee accepted the debtor's exemption but sought to limit the amount exempted, because § 522(d)(5) caps exemptions at $13,900.  The bankruptcy court agreed with the trustee, and the debtor appealed that order in 22-CV-2432.  After filing the appeal, the debtor asked the bankruptcy court to reconsider its order, which the court declined to do after another hearing.  The debtor does not appeal the court's denial of the motion to reconsider.

The debtor filed numerous other objections and motions in the bankruptcy court, including five motions to dismiss his bankruptcy petition.  As the bankruptcy court remarked, while the debtor used different "verbiage" in his five motions, "the concepts" were "the same." (22-CV-4805, ECF No. 7-3 at 47.)  The debtor voluntarily withdrew two of the motions, and the bankruptcy court denied the other three.  The debtor appeals the denial of his fifth motion in 22-CV-4805.

In his four appeals to this Court, the debtor also objects to the bankruptcy court's jurisdiction.  The debtor filed his petition in this district, representing that he lived in Queens, New York, and checked a box affirming that he filed in this district because he "lived in [that] district longer than in any other district" over the last 180 days.  (22-CV-2432, ECF No. 10-2 at 93.)  Nevertheless, he now maintains that there is no jurisdiction, because he "is domiciled" in the Philippines.  (22-CV-4805, ECF No. 6 at 4.)

4

The Court consolidated the debtor's appeals on October 25, 2022 under Federal Rule of Civil Procedure 42(a) and Federal Rule of Bankruptcy Procedure 8003(b)(2), because the bankruptcy orders were issued by the same judge, involve the same parties and raise interrelated factual and legal questions. (22-CV-1664, ECF entry dated Oct. 25, 2022 (citing *In re Windstream Holdings, Inc.*, No. 20-CV-4276, 2020 WL 4481933, at *2 (S.D.N.Y. Aug. 3, 2020)).)

## LEGAL STANDARD

This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of a bankruptcy court under 28 U.S.C. § 158(a)(1). A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo. In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). It reviews the bankruptcy court's discretionary decisions—including whether to approve a settlement—for abuse of discretion. *In re 47-49 Charles Street, Inc.*, 209 B.R. 618, 620 (S.D.N.Y. 1997). "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998).

As a general rule, when an experienced lawyer proceeds *pro se*, "he is not entitled to the same leniency the Court would traditionally afford a *pro se* party." *Carlebach v. Tyrnauer*, No. 15-CV-5610, 2016 WL 5349781, at *1 n.1 (E.D.N.Y. Sept. 23, 2016) (resolving a *pro se* bankruptcy appeal) (citing *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)). The Court will nevertheless treat the debtor as a *pro se* party, because there is no evidence that he is "familiar with" bankruptcy proceedings. *Tracy*, 623 F.3d at 102. (*See* 22-CV-2432, ECF No. 10-2 at 355 (noting that the debtor "does not practice bankruptcy law").)

5

## DISCUSSION

### I.      Jurisdiction

While the debtor concedes that the "bankruptcy court had subject matter jurisdiction under 28 U.S.C. § 1334" (22-CV-1664, ECF No. 5 at 7), he argues that the bankruptcy court did not have jurisdiction over his claim because he "did not reside in the Eastern District of New York [for] 180 [days] before the date of filing of his chapter 7 petition." (*Id.* at 11; *see also* 22-CV-2432, ECF No. 12 at 1; 22-CV-4805, ECF No. 6 at 6–7; 22-CV-4806, ECF No. 5 at 6.) According to the debtor, he "has been a domiciliary of a foreign country since 1992 when he moved out of the United States to live permanently in Southeast Asia." (22-CV-4805, ECF No. 6 at 7.)  "From 1992-2018, he was a domiciliary of the Kingdom of Thailand;" "[s]tarting in 2018, he became a domiciliary of the Republic of the Philippines." (*Id.*)  The debtor thus appears to argue that his petition must be dismissed because he was not a "debtor" under 11 U.S.C. § 109(a) or, alternatively, because the venue does not lie in the Eastern District.

Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." Accordingly, even if the debtor is a "domiciliary" of the Philippines, he may still file for bankruptcy in the United States if he resides or has property here.  The debtor's status is assessed "at the time [his] petition was filed." *In re Axona Int'l Credit & Com. Ltd.*, 88 B.R. 597, 615 (Bankr. S.D.N.Y. 1988), *aff'd*, 115 B.R. 442 (S.D.N.Y. 1990); *see also In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 200 (Bankr. D. Del. 2015) (same).

When he filed the petition, the debtor asserted that he "live[d]" in Queens, New York. (22-CV-4805, ECF No. 7-2 at 8.)  The debtor also checked a box affirming that he chose to file in the Eastern District because he "lived in [that] district longer than in any other district" over the last 180 days.  (*Id.* at 9.)  He subsequently confirmed that the address was correct at the § 341

6

creditors meeting.  (*Id.* at 309.)  All of those assertions were made under the penalty of perjury. (22-CV-4805, ECF No. 7-3 at 48.)  Since then, the debtor has filed three changes of address, representing that he moved to Manhattan on March 12, 2021, to the Bronx on March 29, 2021, and finally to the Philippines on December 14, 2022.  (20-BK-44372, ECF Nos. 15, 32; 22-CV-4805, ECF No. 10.)  Accordingly, he has not "produce[d] . . . any documentation to support his assertion" that he lived outside of the United States when he originally filed for bankruptcy.  *In re Dotson*, No. 9-B-72550, 2010 WL 2756766, at *3 (Bankr. N.D. Ill. July 12, 2010) (discussing residency-based exemptions).  The bankruptcy judge correctly determined that he is a proper "debtor" under § 109(a).

After briefing was complete, the debtor filed a letter reiterating his jurisdictional arguments.  He attached an Eleventh Circuit opinion in one of his other cases (unrelated to this one), in which the court concluded that he is not "domiciled" in the United States under 28 U.S.C. § 1332(a).  (*See* 22-CV-4805, ECF No. 11 at 1 (quoting *Delaney v. Daily Journal Corp.*, No. 22-10788, 2023 WL 2025592, at *1 (11th Cir. Feb. 13, 2023)).)  While a person may only have one domicile for § 1332(a) purposes, he may have many residences under § 109(a), making him a proper debtor in the United States.  *See Wolinsky v. Bradford Nat. Bank*, 34 B.R. 702, 704 (D. Vt. 1983) (unlike "'domicile,'" which "means living in a locality with the intent to make it a fixed and permanent home," "'residence' simply requires bodily presence as an inhabitant in a given place" (citations omitted)); *see also Pitts v. Black*, 608 F. Supp. 696, 710 (S.D.N.Y. 1984); 1 Norton Bankr. L. & Prac. 3d § 17:4 (Jan. 2023).  In any event, the debtor filed "the operative complaint" in the Eleventh Circuit case on January 1, 2022, and the Eleventh Circuit assessed his citizenship as of that date.  *See Beres v. Daily J. Corp.*, No. 22-CV-60123, 2022 WL 17174475,

7

at *1 (S.D. Fla. Nov. 23, 2022).  But as discussed above, the debtor's status under § 109(a) is assessed "at the time [his] petition was filed."  *Axona*, 88 B.R. at 615.[1]

The debtor's venue objection fares no better.  At the time of filing, the debtor asserted that the venue was proper in the Eastern District.  And even if it were not, the remedy would be to transfer the case to a more appropriate venue, not to dismiss.  The bankruptcy court explained as much to the debtor during one of the hearings: "It's not a jurisdictional issue, and if anybody wants to make a motion to change venue, including the Debtor, the Debtor or any party of interest is free to do so."  (22-CV-4805, ECF No. 7-2 at 580.)  The debtor did not move to transfer the case and did not appeal that finding.  His venue argument—even if it had merit—is therefore both forfeited and beyond the jurisdiction of this Court.  *See In re Shapiro*, 128 B.R. 328, 331 (Bankr. E.D.N.Y. 1991) (confirming that venue arguments are not "jurisdictional" and can be forfeited); *In re Coudert Bros. LLP*, 673 F.3d 180, 185 (2d Cir. 2012) ("a district court . . . has no jurisdiction to consider an untimely appeal").[2]

---

[1] The debtor also indicated that he has a checking and a savings account with "Citigroup" and "Citibank."  (22-CV-4805, ECF No. 7-2 at 22, 140.)  Assuming the debtor is referring to the bank's U.S. branch, those accounts provide a separate jurisdictional "predicate."  *See Northshore*, 537 B.R. at 200 (explaining that courts deem § 109(a)'s property "requirement . . . satisfied by even a minimal amount of property located in the United States" (citing *In re Aerovias Nacionales De Colombia S.A. Avianca*, 303 B.R. 1, 8 (Bankr. S.D.N.Y. 2003))); *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 715 (Bankr. S.D.N.Y. 2019) ("deposits in a New York bank account" suffice to meet the property requirement).

[2] The debtor also argues that the bankruptcy court did not afford him the special solicitude due to *pro se* debtors.  In fact, the debtor—a Harvard-educated lawyer—was represented by counsel from April to September 2021.  (22-CV-2432, ECF No. 10-2 at 355.)  His attorneys helped him prepare the second amended schedule, a motion seeking discharge, one of the motions to dismiss and an objection to the HC2 settlement.  In most cases, courts are not obliged to afford special solicitude to *pro se* attorneys.  Nevertheless, the bankruptcy court treated the debtor as "pro se and not experienced in bankruptcy law" when he was not represented by counsel.  (*Id.*; *see also id.* at 197, 340; 22-CV-4805, ECF No. 7-2 at 601; 22-CV-4806, ECF No. 6-2 at 355.)

## II.       Sullivan & Cromwell Settlement, 22-CV-1664

The debtor argues that the Sullivan & Cromwell settlement should be vacated; he asserts that the amount falls below the lowest point of reasonableness, that the trustee did not properly investigate the merits of the debtor's lawsuit and that the bankruptcy court disregarded the debtor's objections to the settlement.

A decision to accept a settlement is within the sound discretion of the bankruptcy court. *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y 1991). Although the court may consider the trustee's opinion in deciding whether to approve a proposed settlement, it must make an independent determination and cannot simply rubber stamp the trustee's proposal. *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994). In the Second Circuit, the bankruptcy court must analyze the following factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (cleaned up). In addition to examining the *Iridium* factors, the bankruptcy judge must determine if the settlement falls below the lowest point in the range of reasonableness. *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). But the court does not need to rule upon disputed facts and questions of law or conduct a "mini trial" on the merits. *Drexel*, 134 B.R. at 505 (citation omitted).

The bankruptcy judge determined that the settlement was "a prudent exercise of the Trustee's business [judgment]" and "in the best interest of creditors because despite Mr. Delaney's claim that the causes of action are worth much more than $13,000 or so, Mr. Delaney signed a schedule under penalty of perjury that [the] causes of action were worth zero." (22-CV-1664, ECF No. 9-2 at 173.)  Nevertheless, the debtor claims that the "settlement of this $13.5 million lawsuit for $12,500" necessarily falls below the lowest point of reasonableness. (22-CV-1664, ECF No. 5 at 8.)  The bankruptcy court's determination was an appropriate exercise of discretion.  In the bankruptcy court, the debtor twice represented, under the penalty of perjury, that the claim's value was "$0.00" because the lawsuit had "big problems of statute of limitations and standing" and that his attorney "tried" without success "to get any settlement." (22-CV-1664, ECF No. 9-2 at 85, 91.)  And although the debtor subsequently changed the value of the claim to "Disputed" in his last amended schedule, he continued to assert that the lawsuit had "big" standing and statute-of-limitations problems. (*Id.* at 113.)  Only after the trustee secured the settlement did the debtor claim that it was unreasonably small.  The bankruptcy court "did not err in relying on the face of [a debtor's] bankruptcy schedules," and the debtor "cannot complain that the Bankruptcy Judge accepted [his] own representations in [his] bankruptcy petition." *In re Froman*, 566 B.R. 641, 649 (S.D.N.Y. 2017).

The debtor cites *In re Spielfogel*, in which a bankruptcy judge rejected a much larger litigation settlement ($700,000) because the proposed amount "would provide just enough to pay the Debtor's creditors and the Trustee's commissions and professional fees, leaving virtually nothing for the Debtor." 211 B.R. 133, 145 (Bankr. E.D.N.Y. 1997). *Spielfogel* was a much different case.  First, it was a decision the bankruptcy court made in the exercise of its discretion, not an appeal overturning a discretionary conclusion.  Second, the facts were much different.

10

The bankruptcy judge "canvassed the issues" involved in the underlying litigation and "determined that the . . . [a]ction [was] indeed viable." *Id.* at 146. "Even the Trustee [was] confident that a positive result could be obtained for th[e] estate through litigation of th[at] action." *Id.* As a result, the bankruptcy judge concluded that, "if the litigation proceed[ed], the creditors [would] ultimately receive a substantial portion, if not 100%, of their claims." *Id.* at 146–47. Moreover, *Spielfogel* "involve[d] an individual Chapter 11 debtor" and "an estate which may arguably not be insolvent," which militated in favor of considering "the individual Debtor's residual rights in the estate." *Id.* at 144. By contrast, "the evaluation of a settlement offer in an insolvent Chapter 7 estate" like this one "is straightforward and the creditors take precedence." *Id.* at 145.

The more appropriate comparison is *In re Nuevo Pueblo, LLC*, 608 F. App'x 40, 42 (2d Cir. 2015), in which the Second Circuit approved a settlement because the underlying lawsuit was likely to entail expensive and protracted litigation, and unlikely to result in a significant damages award even if it succeeded. The court explained that the "responsibility of the bankruptcy judge, and [of this Court] upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* (brackets omitted) (quoting *W.T. Grant*, 699 F.2d at 608). The bankruptcy judge did exactly that in this case.

Equally unpersuasive is the debtor's argument that the trustee should have consulted him about the merits of the case before approaching Sullivan & Cromwell. The trustee was entitled to rely on the debtor's statement that the case had zero value, in part because of the serious standing and statute-of-limitations issues that would have likely precluded any recovery. *See In re Feldman*, 597 B.R. 448, 457 (Bankr. E.D.N.Y. 2019), *aff'd sub nom. Glassman v. Feldman*,

11

No. 19-CV-5002, 2020 WL 6119270 (E.D.N.Y. Oct. 16, 2020) ("The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees and creditors can rely." (citation omitted)).  Moreover, as part of the settlement, Sullivan & Cromwell waived its own claim for sanctions against the debtor for bringing a frivolous lawsuit, streamlining the bankruptcy process and maximizing the estate's value for the creditors.

Citing one docket entry that there was "No Opposition" to the trustee's motion (*see* 22-CV-1664, ECF No. 9-2 at 18), the debtor also argues that the bankruptcy judge did not consider his objections to the proposed settlement.  This claim is refuted by the minutes of the hearing, at which the bankruptcy judge explained that she "reviewed the Debtor's objection, Docket Number 137," and that she is "familiar with the fact that Mr. Delaney has acted at odds with the Chapter 7 Trustee and has taken action with respect to lawsuits." (*Id.* at 173.)  Whether the docket entry was a clerical error, or whether it simply reflected the debtor's absence from the hearing on that date, the record shows that the judge considered the debtor's objections.[3]

Finally, the debtor contends that he should have been allowed to buy the lawsuit from the estate.  The bankruptcy judge rejected this alternative because the debtor never made an offer to the trustee in the month between the trustee's motion to approve the settlement and the hearing: "Relying on Mr. Delaney to come up with a higher or better offer is—you know, who knows whether that's going to happen or not." (*Id.*)

---

[3] The debtor also argues that he could not participate in the settlement hearing because the bankruptcy court changed the procedure for dialing into telephonic hearings, and that he was therefore denied due process.  But the dial-in instructions appear to have been the same as those from prior hearings. (22-CV-1664, ECF No. 9-2 at 123, 224.)  In any event, the debtor did not contact the trustee's counsel or alert the bankruptcy court to his difficulty dialing in.  These facts do not establish a due process violation.

In short, given the benefits to the estate and the creditors and the very small chance that the debtor's litigation would have succeeded, the bankruptcy judge acted within her discretion in approving the settlement.

### III.    HC2 Settlement, 22-CV-4806

The debtor also challenges the bankruptcy court's approval of the HC2 settlement.  HC2 is a legal staffing agency that offers document-review services to various law firms in the United States.  The debtor worked for HC2 on an at-will basis, reviewing Thai documents for the law firm Wilmer Hale.  *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 90, 92 (S.D.N.Y. 2020).  At the start of the COVID pandemic, the debtor emailed HC2, asking to work from home or, if remote work posed confidentiality concerns, whether he could be paid without doing any work.  *Id.* at 91.  Wilmer Hale rejected remote work and suspended the project; soon after, HC2 terminated the debtor's employment.  *Id.*  After the debtor filed a complaint in a Florida court, alleging that HC2 engaged in unlawful business practices and terminated him in retaliation for raising COVID concerns, HC2 sued the debtor for more than a million dollars in the Southern District of New York, alleging breach of the employment agreement and disclosure of confidential information in the Florida lawsuit.  *Id.* at 92–93.  The debtor asserted several counterclaims in his answer, including whistleblower retaliation in violation of New York Labor Law ("NYLL"), breach of confidentiality and intentional infliction of emotional distress.  *Id.* at 95.

The Southern District judge granted HC2's motion to dismiss the debtor's counterclaims for failure to state a claim.  As relevant here, the court ruled that the debtor did not plausibly allege retaliation under NYLL because HC2's conduct did not "violate[] any law, rule or regulation."  *Id.* at 97.  As the court explained, the only executive orders or pandemic regulations that were in effect "at the time" were "directed to local governments and political subdivisions," not private employees.  *Id.*  The debtor appealed the decision to the Second Circuit, which stayed

13

the appeal because the bankruptcy process was already underway.  The trustee subsequently

negotiated a settlement with HC2, whereby HC2 agreed to pay $25,000, and both parties agreed

to release all pending claims.  (22-CV-4806, ECF No. 6-2 at 112–13.)

      The debtor opposed the settlement, arguing that HC2 brought fraudulent claims, the

trustee did not properly investigate the strength of the debtor's counterclaims, and that $25,000

was below the lowest point of reasonableness.  (*Id.* at 119–24.)  The bankruptcy judge approved

the settlement after a hearing.  (*See* 22-CV-4806, ECF No. 6-3 at 9–55.)  Applying the *Iridium*

factors (discussed above), the court concluded that "the balance tips in favor of settlement

because of the low possibility of success," and noted that the debtor "valued the litigation claims

at zero dollars in his schedules." (*Id.* at 38.)  The court also pointed out that the debtor's attorney

confirmed that "the claims against HC2 are like a lottery ticket and they probably are worth

zero" during the hearing.  (*Id.* at 39.)  Moreover, "the interest of creditors support[ed] a

settlement" because there was "at least a chance that creditors will receive a distribution on

account of their claims." (*Id.* at 40.)  Finally, the court found that the trustee had done its due

diligence by speaking to the debtor's counsel and reviewing the pleadings.  (*Id.* at 44.)

      The debtor did not appeal the order approving settlement.  Instead, about eight months

later, he moved to vacate the order, citing an unrelated Southern District decision which,

according to the debtor, undermined the court's analysis in *HC2* and made it likely that the

Second Circuit would reinstate the debtor's counterclaims.  *See Arazi v. Cohen Bros. Realty*

*Corp.*, No. 20-CV-8837, 2022 WL 912940 (S.D.N.Y. Mar. 28, 2022).  Specifically, the debtor

pointed to a footnote in *Arazi*, in which the court observed that *HC2* "appears to have relied, in

part, on [outdated] law," and set a pleading standard that was too high.  *Id.* at *13 n.13.  The

debtor also reiterated his arguments about the settlement's unreasonableness and the trustee's

lack of diligence.  Finally, he claimed for the first time that the Southern District did not have subject matter jurisdiction to decide *HC2*.

The bankruptcy court declined to vacate the settlement.  Observing that a motion to vacate can be granted only upon a showing of a "mistake, inadvertence, surprise or excusable neglect" and "only [in] exceptional circumstances" (22-CV-4806, ECF No. 6-3 at 74–75 (discussing Fed. R. Civ. P. 60(b))),[4]  the court explained that *Arazi* did not "overturn the actual decision in the Delaney case" because, footnote aside, *Arazi* confirmed that the "'executive orders'" in effect when HC2 terminated the debtor "'had not yet been directed toward private employers.'"  (*Id.* at 74 (citing *Arazi*, 2022 WL 912940, at *12).)  Thus, even if *HC2* applied an "improper" pleading standard, there was an "alternate bas[i]s" for dismissing the debtor's claim. *Id.*

The debtor appeals the bankruptcy court's denial of his motion to vacate.  He argues that (1) *Arazi* created an intra-circuit split as to the appropriate pleading standard that only the Second Circuit can resolve; (2) the settlement was generally improper because it was below the lowest point of reasonableness and the trustee did not properly investigate his counterclaims; and (3) the bankruptcy court did not have jurisdiction to approve settlement because the Southern District did not have subject matter jurisdiction over the lawsuit.  I address each argument in turn, keeping in mind that whether to grant a Rule 60(b) motion is within the bankruptcy court's discretion.  *See Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

In declining to vacate the settlement, the court did not rule on the relative merits of *HC2* and *Arazi*, or address the so-called "intra-circuit split."  That was appropriate, because *HC2* and *Arazi* were relevant only as to the probability that the Second Circuit would reinstate the debtor's

---

[4] Federal Rule of Bankruptcy Procedure 9024 makes Rule 60(b) applicable to bankruptcy proceedings.

counterclaims in *HC2*. As the bankruptcy judge explained, that probability was exceedingly low, even if the *HC2* court applied the wrong pleading standard, because there was an alternative basis for dismissal in *HC2*. And even if the debtor's claims survived a motion to dismiss, the trustee would still face a "lengthy and expensive litigation" since "the causes of action asserted against HC2 are very fact-intensive, and . . . unlikely to be resolved on a motion for summary judgment." (22-CV-4806, ECF No. 6-3 at 39.) The certainty of settlement thus weighs in favor of approval, especially because the debtor has few other assets from which to repay his creditors. The bankruptcy judge did not abuse her discretion in declining to vacate based on *Arazi*.[5]

The debtor also objects that the settlement is not fair or equitable. I do not address those arguments because the debtor did not appeal the underlying settlement order, which resolved all of those concerns. *See In re Koper*, 560 B.R. 68, 73 (Bankr. E.D.N.Y. 2016) ("In the Second Circuit, the appeal from the denial of a Rule 60 motion brings up only the denial of the motion and not the merits of the underlying judgment itself." (cleaned up) (quoting *In re Teligent, Inc.*, 326 B.R. 219, 224 (S.D.N.Y. 2005))).

Finally, the debtor claims that the bankruptcy court did not have jurisdiction to approve the settlement because the Southern District did not have subject matter jurisdiction over the lawsuit. The debtor does not explain why the Southern District did not have subject matter jurisdiction. Regardless, the debtor could have raised this during the original settlement hearing

---

[5] Although it does not affect the decision in this case, there is no "intra-circuit split." Everyone agrees that a "complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448, 452–53 (2014). And while the *HC2* court made a cursory "see also" reference to an outdated New York case suggesting a higher pleading standard, it followed that reference with nearly a page of up-to-date citations, including *Webb-Weber*. *See HC2*, 510 F. Supp. 3d at 96. More important, the Southern District dismissed the debtor's counterclaims not because he failed to plead a particular law or rule in his complaint but because the conduct the debtor alleged did not violate any law or rule in effect when HC2 terminated him. *See id.* at 97.

in the bankruptcy court, and did not.  Accordingly, it is not within the scope of the motion to

vacate under Rule 60(b).  *E.g.*, *Polanco v. United States*, Nos. 14-CV-1540 & 11-CR-2, 2017

WL 4330373, at *1 (S.D.N.Y. Sept. 27, 2017) (Rule 60(b) allows the court to relieve a party

from a final judgment based on a mistake, newly discovered evidence or upon a showing of

"exceptional circumstances" (internal quotation marks and citations omitted)).

The bankruptcy judge's denial of the motion to vacate was an appropriate exercise of

discretion.

### IV.    Exemptions, 22-CV-2432

When a debtor files for bankruptcy protection, "all legal or equitable interests of the

debtor in property" become property of the bankruptcy estate.  11 U.S.C. § 541(a)(1); *see*

*Schwab v. Reilly*, 560 U.S. 770, 785 (2010).  To facilitate a "fresh start," however, 11 U.S.C. §

522 allows a consumer debtor to claim certain property as exempt, which "removes the property

from the bankruptcy estate, putting it beyond the reach of creditors."  *In re Johnson*, No. 10-

12873, 2011 WL 7637217, at *2 (E.D. Mich. June 14, 2011).  One such exemption—often called

the "wildcard" or the "catchall"—is listed in § 522(d)(5); it allowed the debtor to exempt his

"aggregate interest in any property, not to exceed in value $1,325 plus up to $12,575 of any

unused amount of the [homestead] exemption."  11 U.S.C. § 522(d)(5).  The parties agree that

the debtor did not claim a homestead exemption, making the full $13,900 available to him under

§ 522(d)(5).

After the trustee settled the HC2 litigation, the debtor amended his schedule, requesting

that all of the $25,000 settlement be exempted under § 522(d)(5).  (22-CV-2432, ECF No. 10-2

at 27.)  The trustee initially opposed the exemption because the debtor was not forthcoming

about his assets.  After the bankruptcy court pointed out that "federal law provides no authority

for bankruptcy courts to deny an exemption on a ground not specified in the Code," *Law v.*

*Siegel*, 571 U.S. 415, 425 (2014) (emphasis omitted), the trustee accepted the exemption, seeking only to limit the amount exempted to the statutory maximum.  (22-CV-2432, ECF No. 10-2 at 359–60.)  Because the debtor already sought exemptions for other assets, including bank accounts, the trustee argued that the debtor could only exempt $12,387.92 of the HC2 settlement. (*Id.* at 360–61.)  The bankruptcy court agreed and approved the exemption for that amount.  (*Id.* at 361.)  The debtor appeals the bankruptcy court's order to this Court.

While the appeal was pending, the debtor sought reconsideration in the bankruptcy court. He did not dispute that § 522(d)(5) sets an aggregate limit of $13,900, nor did he question the bankruptcy court's arithmetic.  Instead, for the first time, he claimed that a different exemption should apply: § 522(d)(11)(E), which covers "payment[s] in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."  Although the debtor had never claimed this exemption in his schedules (*see* 22-CV-2432, ECF No. 10-2 at 25–28, 112–13, 148–57, 158–63, 173–75), the trustee nevertheless asked the bankruptcy court to consider its application to resolve the dispute. The bankruptcy court declined to apply the exemption "because the [HC2] settlement [was] not based on loss of future earnings."  (*Id.* at 366.)  "Rather, HC2 paid the funds . . . to stop the endless stream of litigation."  (*Id.*)  The court further reasoned that "the settlement sum was not the result of an estimate of lost wages incurred because there was no finding of wrongful termination of the Debtor," that "the Debtor's counterclaims had already been dismissed," that "the Debtor has not put forth any calculation as to the amount of lost wages" and, finally, that "the Debtor has not made any showing as to what portion of the award would relate to pre-

petition . . . wages" and therefore could not be exempt under *In re Jackson*, 593 F.3d 171, 178 (2d Cir. 2010).[6] (*See id*. at 366–68.)  The debtor did not appeal the court's denial to reconsider.

Because the debtor does not dispute the bankruptcy court's calculation of the exemption under § 522(d)(5), the only question on appeal is whether the debtor is also entitled to an exemption under § 522(d)(11)(E).  Absent factual disagreements, this Court reviews the bankruptcy court's interpretation of an exemption's scope "de novo."  *In re Maresca*, 982 F.3d 859, 862 & n.3 (2d Cir. 2020); *In re Jackson*, 394 B.R. 8, 11 (D. Conn. 2008) (discussing § 522(d)(11)(E)), *aff'd*, 593 F.3d 171 (2d Cir. 2010).

The debtor cannot claim an exemption under § 522(d)(11)(E).  First, the debtor never appealed the bankruptcy court's decision addressing the exemption.  More fundamentally, he never claimed it on any of his schedules.  While exemptions must be "construed liberally in favor of debtors," *In re Glenn*, 430 B.R. 56, 58 (Bankr. N.D.N.Y. 2010), bankruptcy courts have held that they "are not automatic," *In re Schneider*, Nos. 12-77005 & 13-70791, 2013 WL 5979756, at *5 (Bankr. E.D.N.Y. Nov. 8, 2013) (citation omitted)).  "They exist only as a result of the affirmative declaration of the debtor."  *Id*. at *5 (citation omitted); *see also In re Hill*, 95 B.R. 293, 297 (Bankr. N.D.N.Y. 1988) ("for a claim of exemption to be successfully accomplished, such claim must be clearly asserted and the property claimed as exempt must be clearly described" (cleaned up)).

The Second Circuit has not yet addressed whether a debtor may claim an exemption not listed on any of his schedules, but the bankruptcy courts' analysis is persuasive.  Section 522(b)(1) provides that a debtor "may exempt" certain property from the estate.  To do so

---

[6]  *In re Jackson* held that the phrase "'future earnings' in § 522(d)(11)(E) does not encompass earnings attributable to the period prior to the debtor's filing of the bankruptcy petition."  593 F.3d at 178.

successfully, however, the "debtor *shall* file a list of property that [he] claims as exempt under subsection (b)."  11 U.S.C. § 522(l) (emphasis added); *see also* Fed. R. Bankr. P 4003(a) (the "debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by [Bankruptcy] Rule 1007").  The statutory text places the burden of claiming an exemption squarely on the debtor—and prescribes a specific point in time when the debtor must do so.  All of that makes good sense.  As the Supreme Court explained in *Schwab*, when the debtor lists his exemptions on a schedule, he gives notice to the parties involved and an opportunity to object.  *See* 560 U.S. at 785, 792–93 (holding that the debtor must "declare the value of her claimed exemption in a manner that makes the scope of the exemption clear").  Without such notice, a debtor could sandbag creditors and the trustee with exemptions and file endless motions for reconsideration suggesting yet new exemptions, thus delaying prompt resolution of his creditors' claims and wasting estate money on litigation.  Indeed, that is exactly what happened in this case: the debtor filed four schedules (including one under the guidance of counsel) and never claimed an exemption under § 522(d)(11)(E).  He cannot do so on a motion to reconsider, and the bankruptcy court was right to deny this exemption.[7]

## V.     Motion to Dismiss the Bankruptcy Petition, 22-CV-4805

Finally, the debtor challenges the bankruptcy court's denial of his motion to dismiss.  He identifies the following nine errors: the court (1) incorrectly found that *Arazi*, discussed above, did not affect the validity of the HC2 settlement; (2) allowed HC2 to interfere fraudulently in the bankruptcy process and extort a settlement; (3) relied on false information from HC2 and the

---

[7]  Even if the debtor were permitted to claim the exemption on a motion to reconsider, § 522(d)(11)(E) does not apply for the reasons the bankruptcy court cited.  The settlement was not meant to compensate for future earnings: $25,000 was not an estimate of the lost wages, and the stipulation was explicit that "HC2's agreement to pay . . . is in no way a reflection or acknowledgement . . . of any liability" but "is made to avoid the burden and expense of litigation."  (22-CV-2432, ECF No. 10-2 at 9.)

Trustee that the debtor owned property in Westchester County and had money in undisclosed accounts; (4) ignored the debtor's pleas that he did not appreciate the consequences of filing for bankruptcy because he filed *pro se* and through fraudulent software (Upsolve); (5) did not consider the debtor's interest in having a "fresh start;" (6) did not take into account that the debtors' creditors did not object to the motion to dismiss; (7) did not discuss the debtor's excellent credit history; (8) did not consider that the debtor never abused the automatic stay; and (9) ruled that dismissal would not be in the best interests of creditors without any specific findings.  (22-CV-4805, ECF No. 6 at 2–3.)

A debtor may appeal to a district court as of right "from final judgments, orders, and decrees" of the bankruptcy court.  28 U.S.C. § 158(a)(1).  To appeal an "interlocutory order[]," however, the debtor must first seek "leave of the court."  *Id.* § 158(a)(3).  The Second Circuit has not definitively ruled that a bankruptcy court's denial to dismiss a bankruptcy petition constitutes a final order.  *Compare In re Flor*, 79 F.3d 281, 283 (2d Cir. 1996) (suggesting that a bankruptcy court's order is "not final" where a "bankruptcy judge . . . neither dismisse[s]" nor converts the petition), *with In re Smith*, 507 F.3d 64, 72–76 (2d Cir. 2007) (vacating the bankruptcy court's order denying dismissal without considering finality).  But district courts in this Circuit have found that a "denial of a motion to dismiss a bankruptcy petition" is an "interlocutory" order not appealable as of right.  *E.g.*, *In re Segal*, 557 B.R. 46, 50 (E.D.N.Y. 2016); *see also Barcelona Cap., LLC v. Neno Cab Corp.*, No. 22-CV-90, 2023 WL 363067, at *4 (E.D.N.Y. Jan. 23, 2023).  So do other circuits that have considered this question.  *See In re Donovan*, 532 F.3d 1134, 1137 (11th Cir. 2008) ("Here, the bankruptcy court's order denying [creditor's] motion to dismiss the Chapter 7 case is not a final order.  By denying her motion to dismiss, the bankruptcy court permitted the Chapter 7 case to continue.  The court did not conclusively resolve the bankruptcy

21

case as a whole, nor did the court resolve any adversary proceeding or claim." (footnote omitted)); *In re Phillips*, 844 F.2d 230, 235–36 (5th Cir. 1988).

While "finality" is a more flexible concept in the bankruptcy context than in ordinary civil litigation, *In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir. 1995), a bankruptcy order is typically considered final only when it "finally dispose[s] of discrete disputes within the larger case," *In re Sonnax Indus.*, 907 F.2d 1280, 1283 (2d Cir. 1990) (cleaned up).  An order denying dismissal is "no more a 'final decision' than an order denying summary judgment or denying a request for additional discovery; the litigation proceeds and the issue will be reviewed if it turns out to make a difference to an order that is independently appealable." *Caldwell-Baker Co. v. Parsons*, 392 F.3d 886, 888 (7th Cir. 2004) (discussing a district court's decision to withdraw the reference to the bankruptcy court).  Accordingly, I treat the debtor's notice of appeal as a motion for leave to appeal, as authorized by Bankruptcy Rule 8004(d).  *See In re Segal*, 557 B.R. at 51.

To determine whether to grant leave to appeal under § 158, courts look "to the standards articulated by Section 1292(b)." *2178 Atl. Realty LLC v. 2178 Atl. Ave. Hous. Dev. Fund Corp.*, No. 20-CV-1278, 2021 WL 1209355, at *3 (E.D.N.Y. Mar. 30, 2021).  That provision allows courts to accept appeals of interlocutory orders only if "the order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Osuji v. U.S. Bank, N.A.*, 285 F. Supp. 3d 554, 558 (E.D.N.Y. 2018) (internal quotation marks and citation omitted).  All three requirements must be met.  *In re Segal*, 557 B.R. at 51.  And the courts "must be mindful of the foundational principle that interlocutory appeals are strongly disfavored in federal practice." *Barcelona Cap.*, 2023 WL 363067, at *5 (internal quotation marks and citation omitted).  "Granting leave for an interlocutory appeal"

22

thus "represents extraordinary relief as only exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Joe's Friendly Serv. & Son, Inc.*, 628 B.R. 181, 185 (E.D.N.Y. 2021) (internal quotation marks and citation omitted).

I decline to grant leave to appeal because the bankruptcy judge's decision does not raise "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Veeraswamy v. Jones as Tr. of Est. of Veeraswamy*, No. 19-CV-2137, 2019 WL 1876788, at *2 (E.D.N.Y. Apr. 26, 2019) (internal quotation marks and citation omitted). In this Circuit, "the debtor has no absolute right to dismissal of a Chapter 7 case." *Smith*, 507 F.3d at 72 (citation omitted). Rather, the bankruptcy court' decision "is guided by equitable considerations," and the court "has substantial discretion" to "consider . . . the interests of the various parties." *Id.* at 73 (citations omitted); *see also In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996) (observing that "decisions [that] invoke the exercise of a bankruptcy court's equitable powers" depend "upon the facts and circumstances of each case").

In denying the debtor's motion to dismiss, the bankruptcy judge correctly applied "[t]he legal standard for determining whether a Chapter 7 case should be dismissed:" "whether dismissal is in the best interest of all parties." (22-CV-4805, ECF No. 7-3 at 48); *accord Smith*, 507 F.3d at 72 (confirming that "the appropriate analysis" on a motion to dismiss a bankruptcy petition is "whether dismissal would be in the best interest of all parties in interest" (internal quotation marks and citations omitted)). The bankruptcy judge then explained that the debtor did not meet that standard because the "Trustee has been able to achieve a modest settlement [in the two litigations] and it has some money to distribute to creditors," which "would go away if the case is dismissed." (22-CV-4805, ECF No. 7-3 at 48.) Moreover, the creditors could have been

23

prejudiced because "[t]here's already been a lot of work in this case," (*id.*).  *See Smith*, 507 F.3d at 72 ("Creditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them." (cleaned up)).

Nothing in that decision presents a question of law.  The debtor "simply wants this Court to weigh the relevant facts differently than the Bankruptcy Court and to reach the opposite result."  *Barcelona Cap.*, 2023 WL 363067, at *6. [8]  Nor has the debtor demonstrated any exceptional circumstances warranting leave to appeal.  On the contrary, the debtor's repeated failure to disclose pending litigations—and, consequently, potential assets that could result from those litigations—make dismissal particularly inappropriate; his lack of candor reflects his unwillingness to pay his creditors voluntarily outside of the bankruptcy process.  *See In re Livecchi*, No. 9-20897, 2014 WL 6655702, at *3 (Bankr. W.D.N.Y. Nov. 20, 2014) ("The Debtor's tactics during the course of this bankruptcy case—including, for example, his

---

[8]  In November 2022, the debtor submitted 200 pages of previously unavailable authorities to support his claims that "Upsolve is engaged in the unauthorized practice of law," that it fraudulently induced him into filing for bankruptcy and that it did "not distinguish between domicile and residence."  (22-CV-4806, ECF No. 8 at 1–2; *see id.* at 4–208 (attaching a bankruptcy court opinion discussing Upsolve, a brief of New York Attorney General in a Second Circuit case and a proposed *amicus* brief in support of the Attorney General).)  These authorities do not undermine the bankruptcy court's thorough analysis.  As the court explained, a debtor's mistake in filing for bankruptcy does not automatically entitle him to dismissal; a court must determine "whether dismissal would be in the best interest of all parties," which the debtor did not establish here.  *See Smith*, 507 F.3d at 72 (citation omitted).  As for jurisdiction, the petition that the debtor submitted—along with his multiple changes of address—all attested under the penalty of perjury that he resided in New York until December 2022.  *See supra* Part I.  The debtor does not contend that he used Upsolve to file his changes of address.  More generally, the debtor has an obligation to review the documents filed in court, no matter what software he uses.

The debtor finally complains that the bankruptcy process has "drag[ged] out for almost two years with six lawyers representing the trustee and charging fees to the estate with *nothing happening*."  (22-CV-4806, ECF No. 8 at 2.)  But the delays were a product of the debtor's "aggressive" motions and objections in the bankruptcy court "that in [the bankruptcy court's] opinion bordered on the verge of being sanctionable."  (22-CV-4805, ECF No. 7-3 at 36; *see also id.* at 27 (recording 212 items on the bankruptcy court's docket).)  The bankruptcy court appropriately declined "to reward" such conduct "by dismissing the case."  (*Id.*)

continuing refusal to comply with the Court's order to turn over four non-exempt vehicles as property of the Estate . . . —do[] not suggest to the Court that creditors will fare better in obtaining payment if the Debtor is granted dismissal."); *In re Bruckman*, 413 B.R. 46, 51 (Bankr. E.D.N.Y. 2009) ("[D]ismissal of a case after it has appeared that the debtor failed to account honestly for his assets is not to be sanctioned, for such a failure indicates the likelihood of further questionable practices to the detriment of creditors." (quoting *In re Schwartz*, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986))). Accordingly, I deny the debtor leave to appeal the bankruptcy judge's denial to dismiss his petition.[9]

---

[9] This result would be appropriate even if the bankruptcy court's denials to dismiss were final orders because most of the debtor's arguments on his latest motion to dismiss would be barred by *res judicata*. (*See* 22-CV-4805, ECF No. 7-3 at 47–48 (explaining that the bankruptcy court had "already made a ruling on" most of the issues the debtor now raises when deciding the debtor's previous motions to dismiss).) The only arguments the debtor could properly bring before this Court would be: (1) that the bankruptcy court misunderstood *Arazi*'s impact on the *HC2* settlement; (6) that the court did not consider that the debtor's creditors did not object to dismissal and (8) that the debtor never tried to abuse the automatic stay. As explained above, *Arazi* does not undermine the HC2 settlement and, therefore, does not affect the motion to dismiss. *See supra* Part III. The debtor did not raise argument six before the bankruptcy court, so he has waived it in this Court. *See In re Markus*, 620 B.R. 31, 36–37 (S.D.N.Y. 2020). Moreover, while the two credit companies did not object to dismissal, HC2 did. That leaves only argument eight, which, even if it were persuasive, does not provide a reason to disturb the bankruptcy judge's thorough and well-reasoned decision. *See Smith*, 507 F.3d at 73 (reminding the district courts that they may "disturb a decision to deny dismissal under section 707(a) only if the bankruptcy court has exceeded the bounds of the discretion afforded by the statute").

## CONCLUSION

For these reasons, the bankruptcy court's orders are affirmed, and this appeal is dismissed.  The Clerk of Court is respectfully directed to close this case.  The Clerk is also respectfully directed to mail a copy of this Order to the debtor at the address he provided and note the mailing on the docket.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 20, 2023